## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

    **1:23-CR-00083-RCL**

    **SENTENCING: JULY 20, 2023**

ZVONIMIR JURLINA,

      Defendant.

## ZVONIMIR JURLINA'S SENTENCING MEMORANDUM

Defendant, Zvonimir Jurlina, through counsel, respectfully submits to the Court his sentencing memorandum. Mr. Jurlina has accepted responsibility for a violation of 40 U.S.C. § 5104(e)(2)(F), a misdemeanor under federal code. We respectfully request a sentence of 45 days home detention, credit for time spent in custody, and no probation. The following information supports this request.

### I.    Introduction

Mr. Jurlina was in Washington DC on January 5th and 6th of 2021. Mr. Jurlina has on occasion documented contentious situations including demonstrations, riots, or rallies. He attended this rally to document the rally as he had with others. Mr. Jurlina woke up late in his hotel on the day of January 6,

1

2021.  The rioting had already commenced.  He heard that there was a contentious situation and proceeded to go document it.  Mr. Jurlina did not enter the Capitol. As he was walking around documenting what was happening, he heard some commotion and walked in that direction.  When he arrived, he seen that there was a pile of media equipment on the ground and there were people around the equipment that were yelling and hollering.

Mr. Jurlina seen a microphone on the ground and thought it would be funny to pretend to be an anchorman, so he picked it up and pretended that the mic worked while he talked into his own camera.  He said stuff he thought was funny at the time and with hindsight he feels was not so comical such at, "folks, we've got some breaking news."  He also made grandiose statements referring to taking the equipment but only did so for the camera and never acted on those statements. While in the area a man asked for a lighter.  Mr. Jurlina had a lighter that didn't work and handed the man the lighter.  That man appeared to unsuccessfully try and light some metal equipment on fire.  Later, Mr. Jurlina met the newsman who the microphone belonged to, and he handed the microphone he had pretended to use back to the newsman.

Mr. Jurlina did not stomp on equipment.  He did not break anything.  He did possess a microphone that didn't belong to him for a short period prior to

giving it to the rightful owner.  Mr. Jurlina did not partake in yelling at the media in the media area nor did he threaten or assault them.  He did not partake in the action's others had taken that may have caused the media to believe they should leave the area.

## II.     Mr. Jurlina's Background

Mr. Jurlina grew up in New York.  He went to high school in Bethpage, New York.   His upbringing is somewhat typical in that he was raised by hardworking parents and has siblings he grew up with.  His dad owns a small auto shop where Mr. Jurlina helps and works out of.  Unfortunately, his story also involves one too many Americans are increasingly facing, his brother died of a fentanyl overdose.  As he indicated in his presentence interview, he had tried marijuana earlier in life, but his life experiences have led him to live a life free from drug use for many years now.  Being involved with documenting rallies and the like is something that he could do for himself and enjoyed doing.  Aside from his job and his hobby of creating content Mr. Jurlina has nearly full-time duties caring for his 87-year-old grandmother.  She requires constant care, so he resides with her to help her with her daily needs.  Mr. Jurlina also cares for his other Grandmother who does not require as much assistance, but as indicated in the

presentence report, last summer she fell and broke her wrist and Mr. Jurlina helped her extensively throughout the summer while she healed.

### III.   Sentencing Factors Analysis Under 18 U.S.C. § 3553(a)

### A. The nature and circumstance of the offense and history as well as characteristics of the defendant.

Mr. Jurlina did not participate in the greater evils of January 6, 2021.  As previously mentioned, Mr. Jurlina had been sleeping while much of the events took place.  He doesn't deny that his actions were not good choices.  He also believes that his actions were not reflective of who he is.  He regrets allowing himself to be caught up in a portion of the chaos that took place.  It is not an understatement to say that Mr. Jurlina's actions that day were very uncharacteristic of him.  Generally, Mr. Jurlina is quiet, reserved, and levelheaded.

There was no "violence" in Mr. Jurlina's actions in the traditional sense of the word.  Neither was Mr. Jurlina violent with another human, nor was he violent in terms of breaking property.  However, Mr. Jurlina admits that his actions in the media area contributed to the greater violence that occurred on that day.

**B.** **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for our Laws.**

Here, Mr. Jurlina has pled guilty to a misdemeanor for his part and actions in the events that unfolded on January 6, 2021. The sentence should be reflective of others who have pled guilty to misdemeanors and had minimal involvement. The offense is a violation of law, and the sentence should reflect the seriousness of knowingly violating the statutes that ensure peace and tranquility.

Here, the offense, as it played into the bigger events of the day, was destructive and not peaceable. Nevertheless, included in the offense is Mr. Jurlina's conduct. While fully agreeable that he participated in the offense charged, Mr. Jurlina's actions were possibly the least onerous within the context of the offense to which he pled guilty to. The Court should factor in the scale to which Mr. Jurlina's actions fit in context of the offense he is guilty of.

**C.** **Deterrence, prevention of future crimes, and rehabilitation.**

Deterrence should fit within the scope of the actions of the defendant who has pled guilty. Dolling out jail sentences for the sake of teaching the public not to ever engage in the same conduct is unconstitutional because it punishes the defendant not for what he has done but to teach others a lesson. The punishment should fit the crime. The Court should also consider the actions of a defendant

from the time of his release from arrest and charging. A general and logical inference can be made from the actions of a defendant after release. Either a defendant takes it seriously and abides by the terms and conditions placed upon them, or they don't, causing the court to intervene.

Here, Mr. Jurlina was released with pretrial supervision. The release conditions were first imposed on Mr. Jurlina on July 8, 2021, by United States Magistrate Judge G. Michael Harvey. As indicated in the presentence report authored by Monika Lindo, Mr. Jurlina has remained in compliance with all pretrial terms and conditions. (Nonguideline Misdemeanor Presentence Investigative Rep. Part A, ¶ 6-7, July 11, 2023.) Over two years as of the date of the drafting of this document Mr. Jurlina has remained in perfect compliance. While not exclusively instructive to the Court as to future behavior, great weight should be given to the fact that Mr. Jurlina has taken this matter seriously. The gravity with which Mr. Jurlina places on this matter is reflected in his perfect compliance over two years while awaiting a pending resolution.

As the government has correctly indicated in its memorandum in addition to the Nonguideline Misdemeanor Presentence Investigative Rep. Id at Part B, July 11, 2023, Mr. Jurlina has no criminal history. Again, when combining factors for a "totality" view of possible future deterrence needed, it is instructive that Mr.

Jurlina has been a law abiding citizen throughout his life and upon understanding

the wrongfulness of his conduct on the day in which this matter was born he has

elected not to stray down the wrong path but to turn back to the path he has led

for the entirety of his life.  He elects to work hard, take care of his elderly

grandmothers, and not engage in conduct that would put him on a collision course

with law enforcement.  It is for these reasons that we also humbly submit to the

Court that probation is not necessary for Mr. Jurlina.

### D. **Kinds of Sentences Available**

Engaging in an act of physical violence in the Grounds or any of the Capitol

Buildings is a violation of Title 40 U.S.C. § 5104(e)(2)(F).  The code provides a

maximum sentence of six months of imprisonment, a term of probation not more

than 5 years, a fine of not more than $5000.00 and an obligation to pay any interest,

penalties, fines, and/or restitution not timely made.

### E. **The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who have been Found Guilty of Similar Conduct.**

[A comparison of cases has been outlined below]

## IV.  CONTRASTED SENTENCINGS FOR THE COURT'S CONSIDERATION

For ease of reference this compare and contrast list summarizes cases involving incarceration vs cases with no incarceration but court ordered probation. We believe Mr. Jurlina's actions more closely align with facts closer on the spectrum of conduct that would indicate that incarceration is inappropriate, and that home detention is more closely aligned in the effort to avoid disparity.

### Cases Involving Incarceration

### A. Kenneth Rader – 1:22-cr-00057-RCL

Mr. Rader pled guilty to 40 U.S.C. § 5140(e)(2)(G).  Kenneth Rader received a 90-day sentence.  Mr. Rader had an extensive criminal history according to the government's sentencing memorandum in that matter. Additionally, while he was on release used meth on several occasions, he failed to report to drug testing, he failed to timely appear to another court case he had that resulted in a bench warrant.  All in all, the government noted that Mr. Rader had at least 23 prior criminal convictions.

*Rader's Conduct While on Release*

On pretrial release in this case since January 27, 2022, Rader has used methamphetamine multiple times since at least June 22, 2022. ECF No. 30 ("PSR") at ¶ 90. He left inpatient treatment

9

on that date, failed to report to outpatient treatment, and repeatedly failed to appear for drug testing by Pretrial Services. *Id.*; *see also id.* at ¶ 6. Rader also failed to timely appear in state court in Elk Point, South Dakota, on July 21, 2022, resulting in the issuance of a bench warrant and his detention. *Id.*

Figure 1

### B. The History and Characteristics of Rader

Rader's extensive criminal history and his violations of the conditions of release in this case counsel in favor of a sentence of imprisonment. Rader, age 54, has been convicted of crimes on 23 occasions; he has been convicted of an offense almost every two or three years since he was 17 years old, including a criminal mischief conviction within the last year for damaging someone's crops. *See* PSR at ¶¶ 32-54. For example, Rader has multiple convictions for theft and burglary offenses, assaultive conduct,[5] controlled substance offenses,[6] failures to report to custody, and intoxicated driving. He currently stands charged in Union County, South Dakota, with allegedly stalking and trespassing on the property of his former girlfriend in October and November 2021. *Id.* at ¶ 64. Courts have found Rader in violation of parole or probation conditions at least seven times.[7] In addition to his lengthy record of convictions and parole and probation violations, Rader

also has been arrested an additional 11 times as an adult, although the charges were dismissed. *Id.* at ¶¶ 57-66. Rader's lengthy, unrelenting history of criminal conduct, including multiple parole and probation violations, demonstrates his complete disregard for the law and underscores the need for the custodial sentence urged here by the government.

Figure 2

Unlike Mr. Rader and as noted above, Mr. Jurlina has expressed remorse and Mr. Jurlina's actions speak louder than words demonstrated by the seriousness with which Mr. Jurlina has taken his pretrial supervision.  Additionally, Mr. Radar

has an extensive criminal history whereas Mr. Jurlina does not.  This case is a stark example of the opposite of Mr. Jurlina's situation as compared to Mr. Radar.

### B. Anthony Mazzio 1:22-CR-00214-RCL

Mr. Mazzio was originally charged with four counts.  He pled guilty to this Court on Count 4 40 U.S.C. § 5104(e)(2)(G).  Mr. Mazzio entered the Capitol with body armor, a gas mask, and camo clothing.  He remained in the Capitol for an hour and entered the Speaker of the Houses office.  Additionally, there was a question as to the degree of remorse Mr. Mazzio did or did not exhibit after he was charged.  This Court sentenced Mr. Mazzio to 60 days in the Federal Bureau of Prisons.

Here, Mr. Jurlina neither entered the Capitol, nor did he ever attempt or make any efforts to even breach fencing placed around the Capitol to prevent entry.  Further, as previously mentioned, Mr. Jurlina was there to document, not be confrontational with law enforcement or members of congress, as such, he was not dressed in military style clothing or body armor.  Further, Mr. Jurlina is remorseful and continues to demonstrate that he is regretful of his actions on that day.

C. **Chance Uptmore 1:21-CR-00149-RCL**

Mr. Uptmore was charged with 40 U.S.C. § 5104(e)(2)(D)&(G) Violent

entry and disorderly conduct.  He pled guilty to one count of 40 U.S.C. §

5104(e)(2)(G).  This Court sentenced Mr. Uptmore to 30 days incarceration in the

Federal Bureau of Prisons.  Mr. Uptmore, like Mr. Mazzio had entered the Capitol.

He was very close to much of the violence, possibly encouraged property

destruction and destroyed evidence.

Mr. Jurlina did not engage in any of the acts that Mr. Uptmore engaged in.

The circumstances surrounding Mr. Uptmore give indications that he enjoyed

being actively involved with both breaching and being in the Capitol.  Mr. Jurlina,

while documenting, made statements unbecoming of himself but unlike Mr.

Uptmore, Mr. Jurlina at no time made any attempts to destroy Capitol property.

Additionally, Mr. Jurlina did not at any point attempt to destroy evidence.

**Cases in which this Court ordered Probation.**

**A. Anna Morgan-Lloyd 1:21-CR-00164-RCL**

Ms. Morgan-Lloyd was charged with 40 U.S.C. § 5104(e)(2)(D)&(G) as well

as 18 U.S.C. § 1752(a)(1)&(2).  This Court sentenced Ms. Morgan-Lloyd to 36

months of probation.  Although Ms. Morgan-Lloyd did enter the Capitol, it was

determined that she did not engage in violence or destruction of property, she

cooperated with law enforcement, expressed contrition, and had no criminal history.

Here, Mr. Jurlina, much like Ms. Morgan-Lloyd, did not engage in violence. He did not destroy property.  Further, he has expressed contrition and like Ms. Morgan-Lloyd he has no criminal history.  Most starkly, however, Mr. Jurlina did not participate whatsoever in entering or attempting to enter the Capitol unlike Ms. Morgan-Lloyd.

## B. Gary Wickersham 1:21-CR-00606-RCL

Wickersham was charged with 40 U.S.C. § 5104(e)(2) and 18 U.S.C. § 1752(a)(1).  This Court sentenced Mr. Wickersham to 36 months of probation. Mr. Wickersham was one of the first to ascend the stairs after the police line was breached.  He was also one of the first to breach the Capitol near the Senate wing door.  Mr. Wickersham expressed remorse for his actions and had no criminal history in his 81 years of life.

Like Mr. Wickersham, Mr. Jurlina has no criminal history.  Mr. Jurlina has many years to catch up to Mr. Wickersham's age but he, like Mr. Wickersham, has great remorse for his involvement.  Arguably Mr. Jurlina had lesser involvement with the actions of that day than did Mr. Wickersham because Mr. Jurlina was not involved with breaking police lines or entering the Capitol.

13

### C. **Gary and Deborah Kuecken 1:22-MJ-00225**

Both Gary and Deborah were charged with multiple counts including 40 U.S.C. § 5104(e)(2)(D)&(G) as well as 18 U.S.C. § 1752(a)(1)&(2) like Anna Morgan-Lloyd.  Both pled to one count of 40 U.S.C. § 5104(e)(2)(G) like Ms. Morgan-Lloyd.  This Court sentenced both to 36 months' probation, again, like Ms. Morgan-Lloyd.  Facts indicate that the Kueckens had no planned intentions of entering the Capitol on January 6th but when they arrived late, they, in essence, followed others who were heading up and into the Capitol.

Like the Wickersham and Morgan-Lloyd matters, Mr. Jurlina's case is more closely aligned again with the exception that Mr. Jurlina was not involved in any way in entering the Capitol.  Likewise, we submit that Mr. Jurlina's actions were less intrusive or dreadful than those who received sentences of 3 years of probation.

### D. **James Uptmore 21-CR-149-2-RCL**

Mr. Uptmore like his son was charged similarly and pled guilty similarly to 40 U.S.C. § 5104(e)(2)(G).  This Court sentenced Mr. Uptmore to 36 months' probation.  Mr. Uptmore watched some of the more violent chaos unfold and then proceeded to enter the Capital.  Mr. Uptmore also lied to the FBI when questioned about whether he recorded any of the events.  Mr. Uptmore was motivated to enter

mainly because he wanted to keep his son safe by following him up and in.  Mr. Uptmore did not engage in violence and left the Capitol when asked.

Unlike Mr. Uptmore, Mr. Jurlina is not accused of lying to the FBI.  Further, despite being at the Capitol building where many others were entering for various reasons, Mr. Jurlina refrained from engaging in going up into the Capitol building. Mr. Jurlina did not interact with law enforcement.  Additionally, Mr. Jurlina, like Mr. Uptmore has shown remorse by accepting responsibility for his actions.

The former mentioned cases are not exactly similar to Mr. Jurlina's matter in that nearly all if not all of the previous cases where instances in which the defendant's enter the Capitol under various pretenses.  However, the factors outlined in 18 U.S.C. § 3553(a) and the matters in which this Court order probation more closely align with Mr. Jurlina's facts and circumstances.

## V.    Time In Custody and Pretrial

Mr. Jurlina was in custody for one day after being arrested.  He has been monitored by pretrial supervision since he was released on his own recognizance over two years ago.

## VI.    Conclusion

Mr. Jurlina's case is somewhat unique in that he was not involved in entering the Capitol building.  Further, he had no involvement with law

15

enforcement whatsoever.  He did not push past police lines.  Further he wasn't involved with overrunning the media area.  More importantly, he wasn't involved in destroying any equipment that may have been damaged on that day.  His wrongful conduct stems from his spoken words in which he indicated that others could take the equipment that was left behind.  Additionally, he handed a broken lighter to a man he didn't know who was attempting to set some metal equipment on fire.  That man was unsuccessful, but Mr. Jurlina recognizes that his handing the lighter over was a regrettable action.

We request a somewhat unique resolution given the unconventional facts surrounding Mr. Jurlina's actions as compared to others charged on January 6th. Since Mr. Jurlina lives with his grandmother that he cares for home detention will not interfere with that caregiving.  Additionally, we submit that probation is not a necessary factor in this case because Mr. Jurlina is not a continuing threat to society and this statement is backed with the entirety of Mr. Jurlina's life being a law-abiding citizen.  The request is also backed by demonstrable evidence this Court possesses in the Nonguideline Misdemeanor Presentence Investigative Rep. that indicates Mr. Jurlina has remained compliant.  We would submit that Mr. Jurlina's compliant not because he is being supervised but rather because he has lived his life being compliant with no supervision.  Therefore, this incident, while

16

large in the greater picture of actions that occurred on that day by everyone

involved, is but a blip on Mr. Jurlina's lifetime of making correct, law-abiding

decisions.  Mr. Jurlina is remorseful, further indicating that he is not of the mindset

that may need to be monitored to check for correct behavior and decisions.

    For all the foregoing reasons we respectfully ask that this Court give Mr.

Jurlina credit for time served in custody after his arrest and sentence him to 45

days home detention with no probation.

Respectfully submitted this 16th day of July 2023

**THORNLEY LAW FIRM, P.C.**

/s/Zachary Thornley
Pro Hac Vice Admission
Arizona State Bar No: 032363
Thornley Law Firm, PC.
18441 N 25th Ave., Ste. 103
Phoenix, AZ. 85023
Courts@ThornleyLawFirm.com
(602) 686-5223 (Office)
(602) 377-6863 (Direct)
(928) 433-5909 (Fax)
ATTORNEY FOR DEFENDANT